**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**DAVID AFZAL, on behalf of himself and all others similarly situated,**

    *Plaintiff*,

    v.

**BMW OF NORTH AMERICA, LLC and BAVARIAN MOTOR WORKS,**

    *Defendants.*

Civil Action No. 15-8009

**OPINION**

**THIS MATTER** comes before the Court by way of Defendant BMW of North America, LLC's ("BMW NA") motion to dismiss Plaintiff David Afzal's ("Plaintiff") Amended Complaint. Dkt. No. 19. The Court considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

**I.**  **BACKGROUND**

In this putative class action, Plaintiff seeks damages against BMW NA and Bavarian Motor Works ("BMW-GER")[1] (together, "BMW" or "Defendants") for fraudulently concealing and failing to disclose alleged safety defects present in the engines of certain BMW motor vehicle models.

---

[1] The Court notes that Defendant Bavarian Motor Works has not joined in Defendant BMW NA's motion to dismiss. BMW NA's Br. at 1, Dkt. No. 19-1. Bavarian Motor Works has not appeared or filed any papers in this matter.

Defendant BMW-GER is a corporation organized and in existence under the laws of Germany, with its principal place of business in Munich. Amended Complaint ("Am. Compl.") ¶ 27, Dkt. No. 17. Defendant BMW NA is a corporation organized and in existence under the laws of the State of Delaware, with its principal place of business in Woodcliff Lake, New Jersey. Id. ¶ 28. BMW-GER is the parent company of BMW NA. Id. ¶ 27. Defendants are engaged in the business of automobile design, manufacturing, distribution, and automobile servicing in the United States. Id. ¶ 26.

Plaintiff David Afzal is a citizen of California who purchased a used 2011 BMW M3, with approximately 13,100 miles on the odometer, in California in May 2013. Id. ¶ 18. The vehicle was delivered to the original purchaser on November 12, 2011. Id. At the time of Plaintiff's purchase, the vehicle was still covered by a four-year/50,000-mile express warranty. Id. ¶ 19. Plaintiff seeks to certify a class of all California owners or lessees of 2008-2013 model year BMW M3 vehicles containing S65 engines ("Class Vehicles"). Id. ¶¶ 1, 74.

### A. Plaintiff's Experience

In March 2015, at 28,253 miles, while his BMW vehicle was still within the express warranty period, Plaintiff noticed "knocking" and "rattling" noises that appeared to be coming from inside or below the engine. Id. ¶ 20. He brought the vehicle to Steve Thomas BMW, an authorized BMW dealership, on March 30, 2015. Id. Steve Thomas BMW told Plaintiff that the noises were due to "normal exhaust heat expansion." Id. As a result, Plaintiff did not receive any repairs or inspections pursuant to the warranty. Id.

The noises continued. Id. ¶ 21. Plaintiff brought his car to Steve Thomas BMW a second time on April 6, 2015. Id. After inspecting the vehicle over a period of several days, Steve Thomas

BMW again informed the Plaintiff that the noise was attributed to "normal exhaust heat expansion." Id.

Next, Plaintiff sought the opinion of an independent BMW repair specialist on May 1, 2015. Id. ¶ 22. The technician suspected that the noises were caused by excessive wear to the engine's connecting rod bearings. Id. After performing an inspection of the rod bearings, the technician concluded that they were "excessively worn" and that Plaintiff was in danger of "imminent and catastrophic engine failure." Id. ¶ 23. Plaintiff's car was at 28,952 miles at this time. Id. Plaintiff then replaced his connecting rod bearings, rod bolts, and oil filter at a total cost of $2,217.18 for parts and labor. Id. ¶ 24. The noise has not returned. Id.

### B. Alleged Defects

Plaintiff alleges that Class Vehicle engines (the "S65") contain defective rotating assemblies (the "Rotating Assembly Defect"), which leads to "catastrophic engine failure," often shortly after the warranty period expires. Id. ¶ 2. Specifically, Plaintiff alleges that the Rotating Assembly Defect consisted of "defective connecting rod bearings, defective main bearings, defective connecting rod side clearance, and/or insufficient lubrication channels." Id. Connecting rod bearings and main bearings together allow other engine parts to rotate during a combustion cycle. Id. ¶ 42. When the rod bearings and main bearings begin to fail, "metal debris from the defective [b]earings is circulated throughout the engine via contaminated engine oil." Id. ¶ 2.

In a properly designed and manufactured engine, oil thoroughly coats the bearing surfaces so that the bearings seldom touch the crankshaft or connecting rods because a thin barrier of oil prevents metal-to-metal contact. Id. ¶ 47. The Rotating Assembly Defect, in contrast, "causes an insufficient supply of engine oil to coat the bearing surfaces, compromising the integrity of the oil barrier between the bearings and the corresponding metal parts they are designed to protect." Id.

3

¶ 48. As a result, when the S65 is in use, the connecting rods and rod bearings experience "excessive and frequent" contact, as well as between the crankshaft and main bearings. Id.

Plaintiff alleges that the Rotating Assembly Defect "poses serious safety and security issues for operators and occupants of Class Vehicles." Id. ¶ 55.

### C. BMW's Alleged Knowledge of the Defects

Plaintiff alleges that BMW knew or should have known of the Class Vehicles' defects based on several sources of information. First, Plaintiff notes that Defendants became aware or should have become aware of the Rotating Assembly Defect "*at least* as early as July 20, 2013" through the existence of National Highway Traffic Safety Administration ("NHTSA") complaints. Id. ¶ 67 (emphasis in original). The Amended Complaint details several specific NHTSA complaints from July 2013, to April 2015. Id. For example, one report from a Class Vehicle owner states:

> The engine in my BMW died at 74,598 miles . . . . This problem is directly related to the rod bearing inside the engine, which gave out because there is no adequate lubrication to them, I heard of these rod bearings giving out on the S65 engine all over web forums, multiple people have had this happen to them.

Id. ¶ 66.

Next, Plaintiff alleges Defendants knew about the defect earlier than July 2013 through: (1) Defendants' own records of customer complaints both directed towards their customer service department, as well as complaints on Internet forums, which Defendants allegedly monitor; (2) dealership repair records relating to the Rotating Assembly Defect; (3) warranty and post-warranty claims; (4) durability testing; and (5) other various sources. Id. ¶¶ 60-64, 67.

Plaintiff further alleges that Defendants should have been aware of the defect because they exclusively designed and assembled the Class Vehicles. Id. ¶ 58. In particular, S65 Engines were based on a previous model, S85 engines, which purportedly contained a similar defect. Id. ¶ 65.

4

Vehicles using the S85 engine were sold from 2005 through July 2010. Plaintiff alleges that, as with the S65 Engine, "BMW experienced a high volume of reports and service requests from owners of damaged or failed S85 engines between 2005 and 2008." Id.

Finally, Plaintiffs alleges the existence of the Rotating Assembly Defect was material information. Id. ¶ 100. He alleges that he was not aware of the Rotating Assembly Defect at the time of purchase, and had he known, he would not have bought the vehicle, or would have paid substantially less for it. Id. ¶ 10. Even after purchase, Plaintiff alleges that BMW remained under a continuing duty to disclose the Rotating Assembly Defect to members of the putative class. Id. ¶ 39.

### D. BMW's Warranties and Representations

All Class Vehicles come with a New Vehicle Limited Warranty (the "Warranty"). Id. ¶ 68. The warranty protects against "defects in materials or workmanship to the first retail purchaser and to each subsequent purchaser" for a period of four years or 50,000 miles—whichever is first. Id. ¶ 69. Under the warranty, BMW states it "will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized manufactured parts." Id. It requires owners and lessees to bring their vehicles to a BWM dealership for warranty repairs. Id. ¶ 70.

Plaintiff alleges that BMW evaded its warranty obligations by failing to disclose defects in their vehicles, and by representing that the cause of the defect was the owner's abuse or neglect to properly maintain the engine. Id. ¶ 71.

Plaintiff alleges that in addition to the warranty, Defendants disseminated information about its vehicles throughout California and the United States "through advertising, marketing and other publications." Id. ¶ 110. Plaintiff alleges that such advertising "omitted material facts

5

regarding the safety reliability, and functionality of its Class Vehicles . . . which only Defendants knew." Id.

### E. Procedural Background

Plaintiff brought this action on November 10, 2015, and filed an Amended Complaint on February 26, 2016. Plaintiff alleges nine causes of action: (1) Violations of California's Consumer Remedies Act, Cal. Civ. Code § 1750, et seq.; (2) Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; (4) Breach of Express Warranty; (5) Breach of Implied Warranty; (6) Breach of Implied Warranty under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; (7) Breach of Implied Warranty under the Song-Beverly Act, Cal. Civ. Code §§ 1792, 1791.1, et seq.; (8) Breach of the Duty of Good Faith and Fair Dealing; and (9) Common-Law Fraud. Am Compl. ¶¶ 82-156. The Amended Complaint seeks compensatory and punitive damages, along with injunctive and declaratory relief. BMW NA subsequently filed a motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to

6

dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard. "A party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III. ANALYSIS

For the reasons stated below, the Court grants BMW NA's motion to dismiss Plaintiff's implied warranty claims (Counts V and VII) and fraud-based claims (Counts I, II, III, and IX). The Court denies BMW NA's motion to dismiss Plaintiff's breach of express warranty (Count IV), breach of implied covenant of good faith and fair dealing (Count VIII), and Magnuson-Moss Warranty Act ("MMWA") (Count VI) claims.

#### A. Implied Warranty Claims

BMW NA first asserts that Plaintiff's implied warranty claims must be dismissed because Plaintiff has not pled that he is in privity with BMW NA. Furthermore, BMW NA argues that the Song-Beverly Act does not save Plaintiff's implied warranty claim because Plaintiff has not alleged that he purchased his Class Vehicle from a "distributor" or "retail seller" within the meaning of the Act. The Court agrees.

1. Breach of Implied Warranty

"Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." Blanco v. Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1058-58 (Cal. Ct. App. 2008); see also York v. Riddell, Inc., No. 15-02015, 2016 WL 738419, at *6 (C.D. Cal. Feb. 23, 2016) (dismissing breach of implied warranty claim for

7

failure to allege facts demonstrating privity or an exception to the privity requirement).[2] However, California law recognizes an exception to the privity requirement where the plaintiff is a third-party beneficiary to a contract between other parties. Gilbert Fin. Corp. v. Steelform Contracting Co., 82 Cal. App. 3d 65, 69-70 (Cal. Ct. App. 1978) ("California cases permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract."); see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) ("the clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim.").

To assert third-party beneficiary status in a product defect case, a plaintiff must plead that he is the intended consumer benefiting from the agreement between a manufacturer and distributor. See In re Toyota Motor Corp., 754 F. Supp. 2d at 1185. Courts have found that a consumer successfully pleads third-party beneficiary status where he alleges that he purchased a defective product from an authorized distributor or retail seller. See In re Sony VAIO Computer Notebook Trackpad Litigation, No. 09-2109, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (allegation that the retailer from which plaintiffs purchased defective products was manufacturer's authorized retailer and service facility precluded dismissal of a breach of implied warranty claim for lack of privity); Arnold v. Dow Chemical Co., 91 Cal. App. 4th 698, 720 (Cal. Ct. App. 2001) (because distributors and retailers were not intended to be the ultimate consumers, plaintiff could maintain breach of implied warranty claim despite lack of privity with pesticide manufacturer); Cartwright v. Viking Industries, Inc., 249 F.R.D. 351, 356 (E.D. Cal. 2008) (plaintiffs were third-party

---

[2] The parties agree that California law applies to the substantive claims in this case.

beneficiaries to an implied warranty between manufacturer and retailer where plaintiffs purchased windows from the retailer). Plaintiff has not done so.

Here, the Amended Complaint simply states that Plaintiff purchased a pre-owned BMW, without identifying the resale source. Am. Compl. ¶¶ 18-19. Plaintiff does not allege that he purchased his Class Vehicle from an authorized seller. As such, Plaintiff does not allege that he was the intended beneficiary of contract between BMW, the manufacturer/distributor, and a retail seller.[3] Therefore, Plaintiff's breach of implied warranty claim is dismissed with leave to amend.

1. Song-Beverly Act

Plaintiff also asserts a breach of implied warranty claim under the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"). The parties agree that the Song-Beverly Act does not require privity. Nevertheless, this claim also fails because Plaintiff has not alleged that he purchased his vehicle "at retail" as required by the Act.[4]

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code. § 1792. Section 1795.5 extends Song-Beverly

---

[3] Plaintiff's reliance on other motor vehicle cases is misplaced. In Precht v. Kia Motors America, Inc., 2014 WL 10988343, at *2 (C.D. Cal. Dec. 29, 2014) the plaintiff pled that he purchased his allegedly defective vehicle from an authorized dealer. In In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 982-84 (N.D. Cal. 2014), the court simply held that a third-party beneficiary exception exists, without determining if plaintiffs had sufficiently alleged third-party beneficiary status.

[4] In a letter to the Court, Plaintiff asserts that BMW waived the argument that the Song-Beverly Act requires purchase at retail by raising it in their reply brief for the first time. Pl.'s Lttr. Dated May 24, 2016, Dkt. No. 25. The Court is not persuaded. The Court "has discretion to decline to consider new facts or arguments raised in a reply." D'Aiuto v. City of Jersey City, No. 06-6222, 2007 WL 2306791, at *3, n.1 (D.N.J. Aug. 8, 2007). Here, BMW has not raised a new issue, but merely provided more detail. In its opening brief, BMW already put Plaintiff on notice of its argument that his Song-Beverly Act claim required "the requisite facts to maintain such a claim as it related to used vehicles." Def.'s Br. at 6. Where Plaintiff purchased the Class Vehicle is merely one aspect of the argument.

Act protection to the sale of used goods. Id. § 1795.5. The Act defines "retail seller" as an "individual, partnership, corporation, association, or other legal relationship that engages in the business of selling or leasing consumer goods to retail buyers." Cal. Civ. Code. § 1791(l).

Plainly read, the language of the Song-Beverly Act limits actions to consumer goods sold *at retail*—that is, from an entity or individual routinely engaged in the business of selling—in California. In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1097 (S.D. Cal. 2010) ("Courts have routinely dismissed [Song-Beverly-Act] claims against manufacturers where none of the named class members could plead that they purchased the goods "at retail" in California."); see also Morgan v. Harmonix Music Systems Inc., No. 08-5211, 2009 WL 2031765, at *2 (N.D. Cal. July 7, 2009) (dismissing Song-Beverly Act claim because plaintiffs failed to identify where and from whom they purchased the goods).[5]

Here, Plaintiff has not sufficiently pled the details of how he purchased his vehicle. He does not identify the seller of the vehicle, merely stating that he purchased the vehicle in Northern California. Am. Compl. ¶ 19. Since Plaintiff has not alleged that he purchased the vehicle at retail, his Song-Beverly Act claim is dismissed with leave to amend.

---

[5] Courts have noted that the legislative history of Senate Bill No. 272, which introduced the Song-Beverly Act, supports the plain language. Atkinson v. Elk Corp., 109 Cal. App. 4th 739, 750-51 (Cal. Ct. App. 2003) (Senator Alfred H. Song explained in a letter to Governor Ronald Reagan, "the bill deals only with the retail sale of 'consumer goods,' a term which is rather narrowly defined. Non-retail sales of consumer goods, retail sales of non-consumer goods, and all non-retail commercial transactions will continue to be regulated by the Commercial Code and would not be affected by SB 272.") (quoting Sen. Song, sponsor of Sen. Bill No. 272 (1970 Reg. Sess.), letter to Governor, Aug. 24, 1970.).

B. **Express Warranty Claims**

BMW NA argues that Plaintiff's breach of express warranty claim must be dismissed because he has not fulfilled his obligations under the terms of the warranty. Additionally, Defendant argues that the breach of the duty of good faith and fair dealing is duplicative of the express warranty claim, and should be dismissed. The Court disagrees.

1. Breach of Express Warranty

To state a claim for breach of express warranty, a plaintiff must allege the exact terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his injury. See Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986). Plaintiff has done so. He identifies specific language in the Warranty that promised repairs and replacement of defective parts. He alleges that he relied on the statements, and that he incurred expenses repairing his vehicle through an independent technician.

BMW NA argues that Plaintiff did not avail himself of the remedies available under the Warranty. Def.'s Br. at 7-8. Specifically, it argues that Plaintiff should have taken his vehicle back to Steven Thomas BMW to give the authorized dealer a chance to fix it once it was diagnosed with the alleged Rotating Assembly Defect. Id. Plaintiff responds that he fully complied with the terms of the Warranty by bringing his car to an authorized BMW dealership twice within the factory warranty period. Pl.'s Br. at 12.

The face of the Warranty does not resolve this dispute. The Warranty merely states, "[t]o obtain service under this warranty, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW center in the United States." Dkt. No. 19-3.

Accordingly, whether Plaintiff fulfilled his responsibilities under the Warranty is a quintessential fact question. Dismissal at this stage would be premature. Therefore, the Court finds Plaintiff has stated a claim for breach of express warranty.

2. Breach of the Implied Covenant of Good Faith and Fair Dealing

BMW NA next argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is superfluous to Plaintiff's breach of contract claim. Def.'s Br. at 14.

California law recognizes an "implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (Cal. 2000). However, "a claim for breach of the covenant of good faith and fair dealing that is predicated upon the same underlying acts as simultaneously asserted claim for breach of contract may be dismissed as duplicative." Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d 1289, 1300 (C.D. Cal. 2015); see also Env't Furniture, Inc. v. Bina, No. 09-7978, 2010 WL 5060381, at *3 (C.D.Cal. Dec. 6, 2010) (breach of implied covenant claim must "go beyond the statement of a mere contract breach" and not "rely on the same alleged acts") (internal citations omitted).

Here, Plaintiff's implied covenant claim is based on a different set of acts from his express warranty claim. Plaintiff alleges that BMW breached the implied covenant of good faith and fair dealing by "failing to notify Plaintiff and Class Members of the Rotating Assembly Defect . . . and failing to fully and properly repair this defect." Am. Compl. ¶ 150. His express warranty claim, in contrast, is solely limited to BMW's "selling and leasing" of allegedly defective Class Vehicles, and "refusing to honor the warranties by providing free repairs or replacements during the

applicable warranty periods." Id. ¶ 117. In short, the implied covenant claim arises from BMW's alleged failure to disclose while the express warranty claim does not.

Plaintiff has sufficiently alleged that BMW knew—and therefore, should have disclosed—the Rotating Assembly Defect during the warranty period. Specifically, BMW knew or should have known of the Rotating Assembly Defect by July 20, 2013, when a complaint about the defect was filed with NHTSA. Id. ¶ 66. Additional complaints filed in August 2014 and April 2015 identify the same defect. Id. All of these incidents occurred within the alleged 4-year/50,000 mile warranty period. Id. ¶ 67.

Therefore, the Court finds Plaintiff has stated a claim for breach of the implied covenant of good faith and fair dealing.

    3. Magnuson-Moss Warranty Act

The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract" to bring an action in federal court. 15 U.S.C. § 2310(d)(1). In order to state a claim under the MMWA, a plaintiff must first establish a claim under an applicable state law. Cooper v. Samsung Elecs Am., Inc., No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) aff'd, 374 F. App'x 250 (3d Cir. 2010). Here, Plaintiff has stated a claim for breach of express warranty. Therefore, his MMWA cannot be dismissed at this time.

**C. Fraud-Based Claims**

BMW NA argues that Plaintiff's claims sounding in fraud must be dismissed because he has failed to meet the heightened pleading requirements. Specifically, BMW NA argues that Plaintiff has not alleged that Defendants knew of the alleged defect at the time of sale. The Court agrees.

1. California Consumer Protection Laws

Plaintiff alleges three statutory causes of action sounding in fraud: (1) violation of the Consumers Legal Remedies Act ("CLRA"); (2) violation of the False Advertising Law ("FAL"); and (3) violation of the Unfair Competition Law ("UCL").

The CLRA, FAL, and UCL are statutory consumer protection laws designed to safeguard consumers from deceptive practices. Specifically, the CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 833 (Cal. Ct. App. 2006) (citing Cal. Civ. Code § 1770(a)). The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Finally, the UCL provides a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent. Id. § 17200. Each prong of the UCL is "a separate and distinct theory of liability." Kearns, 567 F.3d at 1127. Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006) (citing Cel–Tech Communs., Inc. v. L.A. Cellular Tel. Co., 20 Cal. App. 4th 163 (Cal. Ct. App. 1999)).[6]

Although these claims arise under state law, Plaintiffs' allegations must be pled according to the Federal Rules of Civil Procedure. As a threshold matter, claims sounding in fraud are subject

---

[6] In both his Amended Complaint and Opposition to Defendant's motion to dismiss, Plaintiff appears to allege a UCL violation based on the fraud prong alone. Plaintiff alleges that "Defendants have engaged in 'fraudulent' business practices by knowingly and intentionally concealing from Plaintiff" a material fact. Am. Compl. ¶ 98. He alleges that "these acts and practices have deceived Plaintiff and are likely to deceive the public." Id. ¶ 103. To the extent that Plaintiff seeks to allege a UCL claim under other prongs of the test, he is granted leave to amend.

to Fed. R. Civ. P. 9(b)'s heightened pleading standard.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1122 (9th Cir. 2009) (applying Rule 9(b) standard to UCL and CLRA claims).  The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged."  Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

The standard for the CLRA, FAL, and the fraud prong of the UCL is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the alleged wrongful business practice.  Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (citing Williams v. Gerber Products Co., 552 F. 3d 934, 938 (9th Cir. 2008).  As such, the CLRA, FAL, and UCL are often analyzed together.  Elias, 903 F. Supp. 2d at 843.

Plaintiff bases his statutory claims on Defendant's allegedly active concealment of and intentional failure to disclose to class members that, as a result of the Rotating Assembly Defect, the class vehicles' engines would suffer premature wear.  In particular, he alleges that Defendants "knew that their Class Vehicles and their engines were defectively designed or manufactured," that Defendants were under a duty to disclose because they were "in a superior position" to know of the defects and had "made representations . . . regarding the durability and fitness of Class Vehicles," and that the information is "material information that would affect the average consumer's willingness to buy the Class Vehicles."  Am. Compl. ¶¶ 88-89, 100.

California consumer protection statutes provide for four circumstances in which an obligation to disclose may arise:

15

>(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 939 (C.D. Cal. 2012) (quoting Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (internal citations omitted)).

Here, Plaintiff does not allege that he was in a fiduciary relationship with Defendant. Nor do the parties dispute that the alleged existence of the Rotating Assembly Defect is a material fact about Class Vehicles. The parties only dispute whether Plaintiff alleged that Defendants had knowledge of the defects at the time of purchase.

Under the CLRA, FAL, and UCL, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss.[7] See Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012) (plaintiff must show defendant's knowledge at

---

[7] Plaintiff argues that under the UCL, a plaintiff does not need to establish knowledge or intent. Pl.'s Br. at 23-24. Plaintiff mischaracterizes the law. California case law establishes that a UCL violation for fraudulent business practices is distinct from common law fraud and does not require a showing of scienter. Daugherty v. American Honda Motor Co., 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006). Specifically, plaintiffs need not show that anyone was actually deceived, relied upon the fraudulent practice, or sustained any damage. Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1274 (Cal. Ct. App. 2006). However, for product defect cases brought under the fraud prong of the UCL, courts still require an allegation of the defendant's knowledge at time of sale. Kowalsky v. Hewlett-Packard, 771 F. Supp. 2d 1156, 1160 (N.D. Cal. 2011) ("when federal district courts have considered fraudulent prong claims based on representations about defective products, they have generally required a plausible showing that the defendant knew of the alleged defect when it made the representations alleged to be deceptive"); see also Neu v. Terminix Intern., Inc., No. 07–6472, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (dismissing UCL claim on grounds that plaintiff "fail[ed] sufficiently to allege that Defendants knew their termite prevention plan to be faulty at the time the statements were made"); Baba v. Hewlett–Packard Co., No. 09–05946 , 2010 WL 2486353, at *7 (N.D. Cal. June 16, 2010) (dismissing UCL claim in part because plaintiffs did not sufficiently allege knowledge of the alleged defects). In other words, while the UCL imposes strict liability, it is only in the sense that a defendant may be held liable "regardless of their motivations or subjective assessment of the deceptive nature of their statements." Kowalsky, 771 F. Supp 2d at 1161.

16

time of sale under CLRA and FAL); see also Punian v. Gillette Co., No. 14-05028, 2015 WL 4967535, at *9 (N.D. Cal. Aug. 20, 2015) ("a plaintiff bringing a claim under the FAL must allege sufficient facts to show that a defendant knew that any allegedly false or misleading statements were false or misleading when made"). "[P]laintiffs who successfully allege that a manufacturer was aware of a defect must still present at least a plausible basis for this knowledge." Elias, 950 F. Supp. 2d at 1138.

Typically, plaintiffs who successfully allege that a manufacturer was aware of a defect at time of sale point to specific time periods when defendants received the information. See Gray v. BMW of North Am. LLC, 22 F. Supp. 3d 373, 383 (D.N.J. 2014) (knowledge in 2009 sufficiently pled where complaint alleged "early consumer complaints about the defect" and existence of technical service bulletins about the defect in 2005); Kowalsky v. Hewlett-Packard, No. 10-02176, 2011 WL 3501715 at *4 (N.D. Cal. Aug. 10, 2011) (allegations of knowledge at time of sale sufficient where consumers complained of the defect "both in third-party fora as well as directly to [defendant]" three months prior to plaintiff's purchase); Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (record of complaints between 2003 and 2007 show that defendant was aware of problems in 2003 and 2004 when lead plaintiffs purchased vehicles). Plaintiff has not done so here.

Plaintiff purchased his vehicle in May 2013. However, the earliest date that Plaintiff points to BMW's knowledge of the Rotating Assembly Defect in Class Vehicles is July 20, 2013, two months after the date of purchase. Am. Compl. ¶ 67. While Plaintiff alleges that, in addition to NHTSA records, Defendants became aware of the defect earlier than July 2013 through "(1) Defendants' own records of customers' complaints, (2) dealership repair records . . . (4) warranty and post-warranty claims, (5) durability testing, and (6) other various sources," Id., he fails to

17

identify any specific dates by or on which BMW became aware of the Rotating Assembly Defect through these sources of information. Instead, Plaintiff makes conclusory statements about each source of information such as "Defendants knew or should have known about the Rotating Assembly Defect because of the high number of replacement parts likely ordered by BMW," and "Defendants knew or should have known of the defective nature of the rotating assembly due to the sheer number of reports or engine problems and replacement part sales." Id. ¶¶ 61, 63.

Plaintiff only offers a timeframe for two types of evidence to suggest knowledge prior to July 2013. First, he alleges that because BMW designed the Class Vehicles, it had a system for inspection and testing that should have revealed the Rotating Assembly Defect. Id. ¶¶ 58-59. Second, Plaintiff alleges that BMW had knowledge of an identical defect in older models sold between 2005 and July 2010. Id. ¶ 65. In particular, he alleges that "[a]s with the S65, BMW experienced a high volume of reports and service requests from owners of damages or failed S85 engines between 2005 and 2008." Id. The Court finds that, on balance, these allegations lack the specificity to satisfy the standard for knowledge at time of sale.

Although courts have denied motions to dismiss where plaintiffs pled knowledge based on the existence of a defect in older models and testing, these allegations have only been successful where accompanied by assertions of specific complaints about the alleged defects. See Apodaca v. Whirlpool Corp., No. 13-00725, 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) (knowledge sufficiently pled where complaint alleged "Defendant had exclusive knowledge through testing at the design stage . . . and numerous consumer complaints of the defect"); Aguilar v. General Motors LLC, No. 13-00437, 2013 WL 5670888, at *5 (E.D. Cal. Oct. 16, 2013) (motion to dismiss denied where plaintiff "submit[ted] a sampling of consumer complaints regarding steering problems for class vehicles and previous model years that are dated prior to the date of sale of his vehicle");

18

Catalano v. BMW of North America, LLC, 167 F. Supp. 3d 540, 559 (S.D.N.Y. 2016) ("[Plaintiff] does not attempt to allege BMW's knowledge by mere reliance on conclusory assertions that it must have known of the defects based on its awareness of the Class Vehicles' design. Rather, [the plaintiff] alleges that BMW was aware of defects . . . through numerous [dated] complaints made to the NHTSA and on consumer forums, and based on repair invoices, warranty claims and, most significantly, Technical Service Bulletins that BMW itself issued to dealers").[8]

In contrast, Plaintiff here does not point to any complaints of the alleged Rotating Assembly Defect in prior models beyond offering vague statements that complaints were made. Nor has Plaintiff supported his claim that BMW knew of the design defect with any complaints before July 2013. See Aguilar v. General Motors LLC, No. 13-0437, 2013 WL 3872502, at *4-5 (where no complaints or online postings were dated, plaintiff's "allegation that GM had knowledge of the steering defect at the time of [plaintiff's] purchase . . . is contradicted by the only factual assertions currently before the court") (internal citations omitted); Baba v. Hewlett-Packard Co., No. 09-5946, 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010) (motion to dismiss granted where "[n]one of [the alleged] postings or complaints . . . include[d] any dates, and therefore shed no light on when HP knew of the alleged defects"). Though the Court finds that Plaintiff's allegations, when accepted as true for purposes of this motion, suffice to show that BMW had knowledge of the defect as of July 20, 2013, his pleadings fall short of showing that BMW had acquired the knowledge by May 2013, the month Plaintiff bought his vehicle. Accordingly, Plaintiff's CLRA, FAL, and UCL claims are dismissed with leave to amend.

---

[8] Courts have even suggested that mere allegations of similar defects in prior models is insufficient. For instance, in Apodaca v. Whirlpool Corp., the court noted that "allegations of a recall of prior models are insufficient to infer exclusive knowledge" as to defects in the model at issue, which was designed ten years later. 2013 WL 6477821, at *8.

19

2. Common Law Fraud

Lastly, Plaintiff alleges a common law fraud claim. Like the statutory fraud-based claims, common law fraud is subject to the heightened pleadings standards of Fed. R. Civ. Pro. 9(b). In particular, a plaintiff must offer the "who, what, when, where and how of the events at issue." In re Suprema Specialties Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The elements of fraud are: (1) misrepresentation, (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Gray v. BMW of North Am. LLC, 22 F. Supp. 3d 373, 385 (D.N.J. 2014) (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (Cal. 1996)).

For the reasons stated above, Plaintiff has failed to plead the knowledge element of fraud with particularity because he has not alleged BMW's knowledge at the time of his purchase. Plaintiff's common law fraud claim is therefore dismissed, with leave to amend.

**IV. CONCLUSION**

For the reasons set forth above, BMW NA's motion to dismiss, Dkt. No. 19, is **GRANTED** in part and **DENIED** in part. An appropriate Order accompanies this Opinion.


**Dated: October 17th, 2016**

                                                     */s Madeline Cox Arleo*
                                                     **Hon. Madeline Cox Arleo**
                                                     **UNITED STATES DISTRICT JUDGE**