NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID AFZAL, on behalf of himself and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC and BAVARIAN MOTOR WORKS,<br><br>*Defendants*. | Civil Action No. 15-8009<br><br>OPINION |

**THIS MATTER** comes before the Court by way of Defendant BMW of North America, LLC's ("BMW NA") partial motion to dismiss Plaintiffs David Afzal and Andy Dechartivong's ("Plaintiffs") Second Amended Complaint ("SAC"). ECF No. 34. The Court considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, BMW NA's motion is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

In this putative class action, Plaintiffs seek damages against BMW NA and Bavarian Motor Works ("BMW GER")[1] (together, "BMW" or "Defendants") for fraudulently concealing and failing to disclose alleged safety defects present in the engines of certain BMW motor vehicle models.

---

[1] Defendant Bavarian Motor Works has not joined in Defendant BMW NA's motion to dismiss. BMW NA's Br. at 1, ECF No. 34. Bavarian Motor Works has neither been served nor entered a notice of appearance in this matter. Id. at 1, n.1.

1

Plaintiffs filed the SAC following the Court's Order granting partial dismissal of their Amended Complaint. See Afzal v. BMW of North America, LLC, No. 15-8009, 2016 WL 6126913 (D.N.J. Oct. 17, 2016) ("Afzal I"). The SAC adds a second lead plaintiff, Andy Dechartivong, and otherwise asserts substantially the same allegations as the Amended Complaint.[2]

Defendant BMW GER, a German company, is the parent company of BMW NA, a Delaware company with its principal place of business in New Jersey. SAC ¶¶ 34-35. Defendants are engaged in the business of automobile design, manufacturing, distribution, and automobile servicing in the United States. Id. ¶ 35.

Plaintiff David Afzal is a citizen of California who purchased a used 2011 BMW M3, with approximately 13,100 miles on the odometer, in California. Id. ¶ 18. Plaintiff Andy Dechartivong is a citizen of California who purchased a used 2011 BMW E92 M3 from South Bay BMW located in Torrance, California. Id. ¶ 27. Plaintiffs seek to certify a class of all California owners or lessees of 2008-2013 model year BMW M3 vehicles containing S65 engines ("Class Vehicles"). Id. ¶ 1.

**A. Plaintiffs' Experiences**

   1. Afzal's Experience

Afzal purchased his Class Vehicle in May 2013. Id. ¶ 18. In March 2015, at 28,253 miles, while his BMW vehicle was still within the express warranty period, Afzal noticed "knocking" and "rattling" noises that appeared to be coming from inside or below the engine. Id. ¶ 20. He brought the vehicle to Steve Thomas BMW, an authorized BMW dealership, on March 30, 2015.

---

[2] The Court provides a brief summary of the facts here, as they have been stated in greater detail in the Court's previous opinion granting partial dismissal of the Amended Complaint.

2

Id. ¶ 21. On multiple occasions, Steve Thomas informed Afzal that the noise was attributed to "normal exhaust heat expansion." Id.

Next, Afzal sought the opinion of an independent BMW repair specialist on May 1, 2015. Id. ¶ 22. After performing an inspection of the rod bearings, the technician concluded that they were "excessively worn" and that Afzal was in danger of "imminent and catastrophic engine failure." Id. ¶ 23. Afzal then replaced his connecting rod bearings, rod bolts, and oil filter at a total cost of $2,217.18 for parts and labor. Id. ¶ 24. The noise has not returned. Id.

2. Dechartivong's Experience

Dechartivong purchased his Class Vehicle in December 2014. Id. ¶ 27. In September 2016, at 28,800 miles, Dechartivong experienced "sudden catastrophic engine failure" when his "engine shut off abruptly" while he was driving. Id. ¶ 28. His car was towed to an independent BMW dealership on September 12, 2016, which identified "severe rod-bearing wear, with extensive damage to several of the rod bearings . . . ultimately resulting in engine failure." Id. ¶ 29. Dechartivong then had his car inspected by McKenna BMW, an authorized BMW dealership in Norwalk, California. Id. ¶ 30. McKenna BMW confirmed that the engine could not be repaired, and quoted Dechartivong $31,800 for installation of a replacement engine. Id. ¶ 31. Dechartivong's repeated requests for a new engine from Defendant BMW-NA or McKenna BMW pursuant to his vehicle's warranty have been denied. Id. ¶ 32. His vehicle remains unrepaired and unused since September 2016. Id.

**B. Alleged Defects**

The SAC repeats the allegations of the Amended Complaint. In summary, Plaintiffs allege that the S65 engine of the Class Vehicles contains defective rotating assemblies (the "Rotating Assembly Defect"), which leads to "catastrophic engine failure," often shortly after the warranty

3

period expires. Id. ¶ 2. As background, connecting rod bearings and main bearings together allow other engine parts to rotate during a combustion cycle. Id. ¶ 49-51. Plaintiffs allege that the Rotating Assembly Defect consisted of "defective connecting rod bearings, defective main bearings, defective connecting rod side clearance, and/or insufficient lubrication channels." Id. ¶ 2. When the rod bearings and main bearings begin to fail, "metal debris from the defective [b]earings is circulated throughout the engine via contaminated engine oil." Id. ¶ 2.

In a properly designed and manufactured engine, oil thoroughly coats the bearing surfaces so that the bearings seldom touch the crankshaft or connecting rods because a thin barrier of oil prevents metal-to-metal contact. Id. ¶ 53. The Rotating Assembly Defect, in contrast, "causes an insufficient supply of engine oil to coat the bearing surfaces, compromising the integrity of the oil barrier between the bearings and the corresponding metal parts they are designed to protect." Id. ¶ 55. As a result, when the S65 is in use, the connecting rods and rod bearings experience "excessive and frequent" contact, as well as between the crankshaft and main bearings. Id.

Plaintiffs allege that the Rotating Assembly Defect "poses serious safety and security issues for operators and occupants of Class Vehicles." Id. ¶ 62.

**C. BMW's Alleged Knowledge of the Defects**

In addition to the sources of knowledge identified in the FAC,[3] the SAC identifies three new sources of Defendants' knowledge of the Rotating Assembly Defect: (1) the "inherent and obvious design flaw in the S65 Engine's rotating assembly; (2) early reports from owners whose

---

[3] Sources of knowledge that the FAC alleged, which were discussed in more detail in Afzal I, include: (1) Defendants' own records of customer complaints; (2) dealership repair records; (3) records of consumer complaints to the National Highway Traffic Safety Administration ("NHTSA"); (4) warranty and post-warranty claims made to Defendants; (5) internal durability testing; and (6) complaints reported to internet forums. FAC ¶¶ 88-95.

4

cars manifested the Rotating Assembly Defect; and (3) the manifestation of the Rotating Assembly Defect in the predecessor model to the S65, the S85. Id. ¶ 65.

First, the SAC alleges that the rod bearings in the S65 failed to meet industry standards set forth by Mahle-Clevite, a well-known manufacturer of bearings in the automotive industry—and BMW's own supplier—until at least 2011. Id. ¶¶ 66-69. Specifically, the rod bearings and the main bearings in defective vehicles had a clearance half that of Mahle-Clevite's recommended clearances. Id. ¶¶ 69-70. In other words, the parts were placed closer together than recommended. Plaintiffs allege that by choosing to manufacture the S65 Engine with low-clearance bearings, Defendants "knew or should have known that excessive and premature bearing failure was a foreseeable consequence of its chosen design, with a resulting vastly increased likelihood of premature engine failure." Id. ¶ 72.

Second, Plaintiffs alleges that Defendants "had actual notice of the bearing defect no later than June 2008," based on consumer posts in message boards. Id. ¶ 73. Plaintiffs cite posts from two BMW webforums, www.m3forum.net and www.m3post.com, in which unnamed BMW owners described issues with their vehicles. For example, in one post:

> an owner of an almost new E92 M3 presented his vehicle to a BMW dealership multiple times in or about May 2008 with 'rattling' and 'ticking' noises from the engine. The owner was first told that the noises were not normal, and the dealer requested it be allowed to keep the vehicle for further investigation. After the dealer probed further, the owner was later told that the noises had been investigated and were caused by normal exhaust heat expansion and contraction.

Id. ¶ 74. In later posts on the same thread, the owner stated that he showed the motor to a BMW NA engineer in June 2008, and sent the motor to BMW GER for inspection. Id. ¶ 75.

Third, Plaintiffs allege that Defendants were aware of the defects inherent in the S65 engine because the previous model—the S85 engine—exhibited the same defects. Id. ¶ 82. The S85 engine is a ten-cylinder model of the eight-cylinder S65 engine. Id. ¶ 83. The two engines share

5

the same part numbers for their bearings. Id. ¶ 84. Plaintiffs allege that BMW NA was "informed of at least one catastrophic engine failure in an S85-equipped BMW E60 M5 due to rod bearing failure," according to posts on an online forum. Id. ¶ 85. According to the online posting, this particular engine was presented to a BMW dealership in July 2007, with the findings of catastrophic engine failure due to premature rod bearing wear reported to Defendant BMW NA. Id. Plaintiffs allege that BMW routinely monitors the internet for complaints about their vehicles, and therefore should have been aware of the Rotating Assembly Defect. Id. ¶ 89.

### D. Procedural Background

On February 26, 2016, Plaintiff Afzal filed a First Amended Class Action Complaint ("FAC"), which alleged violations of California consumer protection laws, breach of warranty, common-law fraud, and breach of the implied covenant of good faith and fair dealing. BMW NA filed a motion to dismiss the FAC on March 2016. On October 17, 2016, the Court granted BMW NA's motion in part, dismissing Plaintiff Afzal's implied warranty and fraud claims without prejudice. See generally Afzal I. Plaintiffs filed this SAC in December 2016, amending its fraud and implied warranty claims. The SAC alleges the following causes of action: (1) Violations of California's Consumer Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500, et seq.; (2) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, for "fraudulent business practices"; (3) Violation of the UCL for "unlawful business practice"; (4) Violation of the UCL for "unfair business practice"; (5) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; (6) Breach of Express Warranty; (7) Breach of Implied Warranty; (8) Breach of Implied Warranty under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; (9) Breach of Implied Warranty under the Song-Beverly Act, Cal. Civ. Code §§ 1792, 1791.1, et seq. with respect to Plaintiff Dechartivong only; (10) Breach of the Duty of Good

6

Faith and Fair Dealing with respect to Plaintiff Dechartivong only; and (11) Common-Law Fraud. SAC ¶¶ 110-95. The SAC seeks compensatory and punitive damages, along with injunctive and declaratory relief. In the instant partial motion to dismiss, under Fed. R. Civ. P. 12(b)(6), BMW NA challenges only the fraud and California consumer protection claims.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard. "A party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III. ANALYSIS

### A. Fraud-Based Claims

The SAC asserts statutory causes of action sounding in fraud as well as common-law fraud. BMW NA argues that these claims must be dismissed for failure to meet the heightened pleading

7

requirements. Specifically, BMW NA argues that Plaintiffs have failed to allege that BMW NA knew of the Rotating Assembly Defect at the time of sale. The Court disagrees.

In Afzal I, the court found that the allegations in the FAC, "when accepted as true for purposes of this motion, suffice to show that BMW had knowledge of the defect by July 20, 2013, but the FAC fell short of showing that BMW had acquired the knowledge by May 2013, the month Plaintiff bought his vehicle." 2016 WL 6126913 at *10. The Court noted that the FAC "fails to identify any specific dates by or on which BMW became aware of the Rotating Assembly Defect" from the alleged sources of knowledge. Id. In response, the SAC now bolsters Plaintiffs' allegations with several additional sources of knowledge with dates earlier than July 2013. These include: (1) posts from an internet forum reporting that individuals' Class Vehicles were diagnosed with "bearing" problems by BMW NA as early as June 2008; (2) posts from internet forums reporting that owners of BMW vehicles with a "predecessor engine" that is "identical" to the S65 engine at issue here were diagnosed with "rod bearing" problems by BMW NA as early as July 2007; and (3) an inherent flaw in the manufacture of the S65 engine based on a knowing deviation from an industry standard. SAC ¶¶ 65-87. Plaintiffs allege that they learned about the direct reports from posts on internet message forums. These messages detail how the posters experienced issues with their BMWs, brought their vehicles to BMW dealerships, and were then informed by BWM employees that they had a "bearing" defect. See id. ¶¶ 74-77, 85-86. Plaintiffs also allege that BMW NA employees "were known to periodically review and monitor" the message forums. Id. ¶ 85.

BMW challenges each alleged source of knowledge. First, BMW argues that the reports of a defect in the S65 and S85 engines as detailed on message forums are insufficient to establish BMW's knowledge because they are "hearsay statements by unknown declarants." BMW NA Br.

8

at 8, ECF No. 34. But plaintiffs are not held to the evidentiary standards of the Federal Rules of Evidence on a motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim.").[4]

Second, BMW NA argues that even assuming the reliability of the internet posts, they are "insufficient" to establish knowledge as to BMW NA. See BMW NA Br. at 9. Specifically, they claim that the posts are too few, and that they "fail to allege [the] specific defect." Id. at 9-11. These arguments are unavailing. Here, Plaintiffs have pointed both to posts of owners experiencing "rattling and ticking" noises consistent with a rod bearing issue, and posts of owners' vehicles actually being diagnosed with a "rod bearing," or "bearing" defect. See SAC ¶¶ 73-75, 77, 79, 85. For instance, Plaintiffs allege that in one post, an owner stated that he presented his engine to a BMW dealership in July 2007, "at which point it was fully disassembled and inspected, with the findings (i.e. catastrophic engine failure due to premature rod-bearing degradation) reported to Defendant BMW NA." Id. ¶ 85. Unlike the cases cited by BMW NA in support of the proposition that single internet complaints are insufficient to establish knowledge, the internet posts cited by Plaintiffs identify the specific defect. See, e.g., Oliver v. Funai Corp., No. 14-4532, 2105 WL 930451, at *2 (D.N.J. Dec. 21, 2015) (general complaints about defects in LCD televisions are not sufficient to support knowledge as to the alleged specific defect). These posts, taken together with the allegation that BMW "routinely monitors the internet for complaints" through both is internal customer relations department as well as third-party services, SAC ¶ 89, create an inference that BMW NA was aware of the Rotating Assembly Defect prior to Plaintiffs'

---

[4] Moreover, under Fed. R. Evid. 802, the message forum posts are not hearsay when used to show that BMW NA was aware of the Rotating Assembly Defect, and not for the truth of the matter asserted—whether the Rotating Assembly Defect indeed existed in the vehicles.

9

purchase dates. Moreover, the posts that Plaintiffs point to also identify specific instances where customers directly reported the problem to BMW NA, and BMW NA then diagnosed their engines with a rod bearing defect.[5] See id. ¶¶ 79, 85. Discovery will reveal whether the alleged interactions occurred.[6]

Third, BMW NA argues that any allegations about an inherent flaw in the design of the S65 are insufficient as they are circular. BMW NA cites McQueen v. BMW of North America, LLC, which noted that a "[p]laintiff cannot equate design choices with fraudulent conduct simply by saying so and without pleading facts supporting a plausible inference of knowledge on BMW's part." No. 12-6674, 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014). But in contrast to McQueen, Plaintiffs here allege many details of how BMW's design choices were flawed. Specifically, Plaintiffs allege that BMW deviated from the "industry standard" for rod and main bearing clearances set by Mahle-Clevite, "a well-known manufacturer of bearings in the automotive

---

[5] The other federal district court cases upon which BMW NA relies, where courts granted motions to dismiss fraud-based claims for failure to allege the defendant's knowledge of an alleged product defect with specificity are distinguishable, and not controlling here. See, e.g., Rait v. Sears Roebuck and Co., 2009 WL 2488155, at *3 (D.N.J. Aug. 11, 2009) (no knowledge where plaintiff only alleged the existence of internet complaints, but no direct reports to defendant); see also Baba v. Hewlett-Packard Co., No. 09-5946, 2011 WL 317650, at *3 (same); Berenblat v. Apple, Inc., No. 08-4969, 2010 WL 1460297 at *9 (no duty to disclose where plaintiffs failed to show that "reasonable consumers had an expectation or an assumption about the functionality of the [allegedly defective] memory slots") (internal citations omitted).

[6] BMW NA also disputes whether the posts in the message forums cited in the SAC indeed mention the Rotating Assembly Defect. BMW NA submits select screenshots of the posts, and argues that the screenshots show that "none of the parties who actually experienced the noises wrote that [a BMW entity] diagnosed the noises as being caused by a failure of the rotating assembly, including the connecting rod bearings and main bearings." Reply at 5, ECF No. 39. But this argument asks the Court to find facts based on the contents of the posts, which is inappropriate at this stage. The Court may consider the screenshots as they are "specifically referenced in the [SAC]." In re Able Laboratories Securities Litig., No. 05-2681, 2008 WL 1967509, at *11 (D.N.J. March 24, 2008) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998)). Nonetheless, it is too soon to tell from the face of the messages whether they show that a BMW entity did diagnose the Rotating Assembly Defect.

10

industry." SAC ¶¶ 66-67. They allege that the Class Vehicles were designed with "rod bearing clearances significantly below the minimum industry standard." Id. ¶ 69. For example, the S65 engines were manufactured with a 0.00125" rod bearing clearance, when the standard required 0.00203" to 0.00254" clearances. Id. ¶¶ 68-69. Mahle-Clevite warned that insufficient rod and main bearing clearance could "result in insufficient lubrication of the bearing and crankshaft surfaces because the excessively tight clearances restrict oil flow, resulting in an insufficient oil film" and ultimately leading to catastrophic engine failure. Id. ¶ 71. BMW NA contends that Plaintiffs have not provided a basis for why Mahle-Clavite set an industry standard. BMW NA Br. at 11, n. 10. But again, Plaintiffs do not need to prove the veracity of the standards at this stage. Taking Plaintiffs' allegations as true, BMW knew or should have known that excessive wear on the bearings was a foreseeable consequence of its chosen design.

Finally, BMW NA argues that Plaintiffs conflate BMW NA with BMW GER, and that they thus mistakenly attribute BMW GER's design choices to BMW NA. BMW NA Br. at 6-7. This argument is unavailing as it ignores the SAC's allegations that, construed in the light most favorable to Plaintiffs, do plead an adequate level of communication between BMW NA and BMW GER such that BMW NA would be aware of the design of the Class Vehicles. For instance, Plaintiffs allege that BMW NA is BMW GER's U.S. sales and marketing division, which distributes BMW vehicles through its network of dealers. SAC ¶ 35. The SAC states that there was a "unity of ownership between BMW NA and BMW GER" and that "BMW GER communicates with Defendant BMW-NA concerning virtually all aspects of the BMW products it distributes within the United States." Id. ¶¶ 37-38. Therefore, Plaintiffs have created a reasonable inference that any design flaws known by BMW GER were communicated to BMW NA in the

ordinary course of business. Moreover, the SAC alleges that owners of Class Vehicles directly reported the Rotating Assembly Defect to BMW NA. See id. ¶¶ 73-81, 82-90.

While any of these sources may be insufficient on its own, the Court finds that the totality of these allegations—construed in Plaintiffs' favor—is sufficient to impute knowledge to BMW NA of the Rotating Assembly Defect at the time that Plaintiffs purchased their vehicles. The purpose of the heightened pleading requirements is to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Plaintiffs have done so here. Their allegations put Defendant on notice of precisely the knowledge they should have had prior to when Plaintiffs purchased their vehicles. Namely, that it knew of the Rotating Assembly Defect from direct reports to BMW NA by owners of vehicles with the S65 engine and owners of vehicles with the S85 engine, and that it knew of a deviation from the industry standard for the distance between bearings in its engines. The specificity requirement of fraud also serves the purpose of "prevent[ing] fraud claims meant as a fishing expedition to obtain material facts by way of the discovery process." In re Shop-Vac Marketing and Sales Practices Litig., 964 F. Supp. 2d 355, 360 (M.D. Pa. 2013). Here, the SAC informs the parties of the exact pieces of evidence to uncover during discovery—any internal reports that BMW NA may have documenting customer reports of the Rotating Assembly Defect, and any evidence concerning the decision to deviate from the Mahle-Clevite recommendations—thereby avoiding a fishing expedition.

In short, Plaintiffs have pled a theory of fraud against BMW NA. They allege that in 2005, BMW introduced an S85 ten-cylinder engine. Vehicles with this engine began to exhibit a rod bearing defect, which was directly reported to BMW NA as early as July 2007. Notwithstanding such reports, BMW chose to launch an eight-cylinder version of the same engine, the S65, using

12

specifications that deviated from an industry standard in 2008. Shortly thereafter, they began to receive direct reports of the Rotating Assembly Defect, but did not disclose any material information about the defect prior to Plaintiffs' purchases in 2013 and 2014. Accordingly, Plaintiffs' claims sounding in fraud cannot be dismissed for failure to plead knowledge at the time of sale.

### B. California Consumer Protection Laws

BMW NA also contends that Plaintiffs' causes of action arising from violations of California consumer protection laws, the CLRA, UCL, and FAL, must be dismissed for failure to meet Rule 9(b)'s heightened pleading standard for knowledge. For the reasons stated above, they cannot be dismissed at this time on this basis.

BMW NA next argues that even if Plaintiffs have met the heightened 9(b) pleading standards, their causes of action arising from violations of the FAL must be dismissed because the SAC has not pled any affirmative false or misleading statement made by BMW NA. See BMW NA Br. at 13. Plaintiffs argue that they do not need to plead an affirmative misrepresentation because their claim is based on a fraud by omission theory. Pls.' Opp'n at 20-21, ECF No. 37. The Court agrees with Plaintiffs.

Under the FAL, a plaintiff may assert a cause of action based on alleged omissions only where a defendant has a duty to make disclosures. Such a duty exists in the following four situations: "(1) when the defendant is in fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts." Tait v. BSH Home Appliances Corp., No. 10-0711, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (citing LiMandri v.

13

Judkins, 52 Cal.App.4th 326, 337 (1997)).  Here, Plaintiffs have alleged facts to establish a duty to disclose under at least the second prong of the Judkins test.  Plaintiffs allege that in its written and oral statements to prospective Class Vehicle purchasers, BMW NA omitted material facts regarding the safety, reliability, and functionality of its Class Vehicle by failing to disclose the Rotating Assembly Defect.  SAC ¶¶ 149-50.  In addition, Plaintiffs allege that BMW NA had superior knowledge of these facts on the basis of their "insight into the design and manufacture of the engines in the Class Vehicles," as well as Plaintiffs' inability to learn of the defect until its manifestation.  Id. ¶¶ 117, 119.  Accordingly, the FAL claim cannot be dismissed at this time.

## IV. CONCLUSION

For the reasons set forth above, BMW NA's motion to dismiss, ECF No. 34, is **DENIED**.  An appropriate Order accompanies this Opinion.

**Dated: July 27, 2017**

                                                            */s Madeline Cox Arleo*
                                                          **Hon. Madeline Cox Arleo**
                                                          **UNITED STATES DISTRICT JUDGE**